In re Pedro Ríos. Eduardo Ríos, Appellant.

No. 9865. Argued April 13, 1943.—Decided April 18, 1943.

*Cruz Ortiz Stella* for appellant.   *R. A. Gómez, Prosecuting Attorney (Fiscal),* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

Pedro Ríos, a child less than sixteen years old and an eighth grade student at a school in the ward of Buena Vista, Humacao, was brought before the Juvenile Court of that District as a delinquent child, upon complaint of Mr. Luis F. Camacho. In the complaint he was charged with having shot four times with a revolver at his teacher Ignacio Ortiz, wounding him on the right side of the face.

The court held a hearing in chambers and entered an order in which it declared that the evidence for both sides showed beyond a reasonable doubt that the delinquent child did the acts charged in the complaint and that the circumstances of the case were of such a serious nature that they forbade the court from placing the infant in his home under the custody and vigilance of his own father. Therefore the court ordered that the child be committed to the Reform School.

The court dismissed a motion for reconsideration filed by the infant's father and he appealed to this Supreme Court, alleging in said appeal that the trial court erred in weighing the evidence, which did not justify the order entered, which interpreted erroneously §25 of an Act to establish a system of juvenile courts.

■ We shall summarize the evidence. That introduced in support of the complaint was as follows:

Doctor Víctor Rincón testified that he treated the wounded teacher, Ignacio Ortiz; that he cured him of a bullet wound, which penetrated the angle of the right jaw and came out of the mouth, destroying all the upper teeth, burning the tongue and the interior of his lip and causing his tooth to lodge in the interior of the lip; that the wounded man was confined to the Clinic for two weeks.

Ignacio Ortiz, the wounded man testified that the infant, Pedro Ríos, was his pupil for four years; that on the day the events took place, two girls came to him about 12:20 p. m. and told him that Pedro Ríos would not let them play, although it was the girls' turn to play in the afternoon; that he then went to the grounds, and put all the boys out and that Pedro left, acting as if he were annoyed; that when Pedro left, the witness told him that he was going to talk to his father because Pedro had told him that he wanted to play and that he was going to do everything possible so that the others would not leave; that when Pedro "acted in a disrespectful manner toward me and then I hit him, I hit him with this hand, this way here"; that he did not hit him on the head; that about twenty minutes later, at five of one, and while the witness was instructing two girls in the game of soft ball, he felt something like a revolver go off, and he turned around, since he was not facing that way, and he heard a shot and the bullet penetrated his right jaw; that then he saw Pedro Ríos who told him: "That is so you will respect me"; and that Pedro kept shooting, at him and that he then ran transversally. Cross-examined by the boy's attorney he answered that he hit Pedro with his open hand on the side of the face, but that he hardly touched him, and that it was not a slap he gave him; that there were boys and girls there at that time, but that it is not true that the girls started to make fun of Pedro; that he did not see or hear them make

fun of him; that it is not true that Pedro started to cry, and that he did not see him cry. In replying to questions of the Municipal Judge, he said that Pedro was an average student; that during the first years his behavior could be called good, but not during the last year, since he usually never finished his work and if his attention was called to that, he would turn stubborn and would not work.

Josefa Ortiz, a girl, testified, corroborating what was said by Professor Ortiz and said: That when Ortiz sent for Pedro to lend him the bat, Pedro refused to do it and said that he was not going on the date of the game and that if he would go it would be to play dirty tricks on him; that Ortiz told him that it was his duty to respect him and that he was going to complain to his father; that Pedro then contradicted him and that then Ortiz, with his open hand, hit him on the right parietal region; that then they went to play, leaving Pedro under a tree, and that while they were playing they noticed that Pedro was gone; that a while later, about fifteen minutes afterwards, Pedro came back, walked in the front of the witness and of Ortiz who was talking to her and shot at Ortiz twice; that then she ran and Pedro kept shooting, but that she does not know how many more times he shot. That she did not see that when Ortiz hit Pedro, the boys and girls made fun of him; that Pedro cried and took out his handkerchief; that Pedro is a good boy and that he behaved well.

Rosario Guevara, another young girl, testified more or less the same as was testified to by the Ortiz girl and said that twenty minutes elapsed between the incident between the teacher and the boy and the moment when the latter fired the shots.

Carmelo Gutiérrez, an eyewitness, described the incident in the same manner as the others did, but he added: that what the teacher did was to hit the boy with his open hand on the head, a *"cocotazo"* on the right side, and that the

boys made fun of Pedro, telling him "Chon, Pedro Chon," and that then Pedro went to his home and brought the revolver.

Testifying on his own behalf, the boy, Pedro Ríos, said: that he regretted it after having shot at the teacher; that when he received the blow from the teacher, his schoolmates made fun of him and he started to cry under a tree; that now he studies Catechism on Sunday and works with his father, helping him in the business of minor crops, cane, and cattle. Cross-examined by the prosecuting attorney, he answered at first that he had regretted what he did because "he lost his diploma which he now needs," and when the Prosecuting Attorney asked him if he did not regret it because he realized that he had done wrong, he then answered: "Because of that too."

Eduardo Ríos, the father of the child, testified that he is the second overseer at the "Australia" farm and that he is in a good economic position, having an annual income ranging from $3,000 to $4,000; that his son, since the incident that took place at school, dedicated himself to work, taking care of all his father's affairs and private business; that Pedro is highly useful and necessary to him; that he has a peaceable disposition, that he is obedient, has no vices and that he has never had a complaint about him; that he is ready to take the child under his custody and to assure the court that he will never commit any other offense.

It is regrettable that Ortiz, the teacher, did not have the equanimity and control that a teacher should have to punish, without inflicting corporal chastisement, the mischief committed by a disobedient boy with a violent temper. A complaint by the teacher to the father, in order that he would give his son the punishment he deserved, would have probably avoided the lamentable incident which exposed the teacher to the risk of losing his life. But it is still more regrettable that a discolous and disobedient child who, after

disregarding the orders of his teacher and behaving disrespectfully toward him in such a manner as to cause him to lose control of himself, and finding himself corporally punished by the teacher, waited to arm himself with a revolver so as to make an attempt on the life of one who had been his teacher for four successive years, by attacking him in the back.

We do not find from the evidence any circumstance which would justify our interference with the discretion granted by the law to the juvenile court. Its conclusion being warranted by the evidence, our duty is to respect the same.

██ Did the court commit error by ordering that the child, Pedro Ríos, be confined in the Reform School?

Section 23 of the Act to establish a system of Juvenile Courts expressly prohibits the confinement of a child under sixteen years of age in a common jail, in the company of adult delinquents therein confined. And §25 of said act provides:

"When any child shall be found to be a delinquent child, and the court does not deem it convenient for the child to remain in its home or in another home, the court may order the commitment of the child to any public or private institution; and if the delinquent child is a boy over sixteen years of age, the court may commit such child to the Reform School or to any other institution hereafter created for the confinement of juvenile delinquents." (Code of Crim. Proc., p. 377.)

The child, Pedro Ríos, has been found to be a delinquent child. He was born on June 19, 1927. On the date when the appealed order was entered—November 17, 1942—he was fifteen years, four months and twenty-eight days old.

The appellant being under sixteen years of age at the time of the commission of the crime and on the date on which he was found delinquent, the court, in accordance with §25, *supra,* could in its discretion order his commitment in a public institution like the Reform School, or in a private institution. If the child, Pedro Ríos, had been, at the time he

made the attempt against his teacher's life, over sixteen years of age, in such a case and this being his first delinquency, the juvenile court would not have had jurisdiction to take cognizance of the case, since by §8 of said law and for the purposes of the same the world "child" or "children," "unless specifically stated otherwise shall include any child within Puerto Rico who is under sixteen years of age, or that having once come within the jurisdiction of the juvenile courts by the provisions of this Act has not attained its majority." The juvenile courts, therefore, have jurisdiction over children who, when they committed their first delinquency were less than sixteen years old, and upon those other delinquent children who, being over sixteen years of age but under twenty-one, remain subject to the jurisdiction of a Juvenile Court because of a delinquency committed before they reached the age of sixteen. When the delinquent child is over sixteen years of age and is already subject to the jurisdiction of a juvenile court, such a court can not order his confinement in a private institution. Said §25 leaves to the court's discretion his confinement to the Reform School or to any other institution hereafter created for the confinement of juvenile delinquencies; but this section does not authorize the court to leave the child at his home or to order his confinement to a private institution.

Considering all the circumstances of the instant case, we must conclude that the court below did not abuse its discretion in issuing the order appealed from, which is hereby affirmed.